## Cleveland, Cincinnati, Chicago & St. Louis Railway Company v. John C. Maxwell, Administrator of Archibald S. Maxwell.

1. INSTRUCTIONS—*Where the Evidence is Conflicting.*—In cases where the evidence is conflicting the law requires that the jury be accurately instructed.

2. SAME—*As to What Constitutes Negligence.*—An instruction which tells the jury what " is negligence in itself " invades the province of the jury.

3. RAILROADS—*Freight Trains Carrying Passengers.*—Freight trains carrying passengers are not required to receive and discharge passengers at the platform of the passenger depot before doing necessary switching, unless such is the usage of the road.

4. COMPARATIVE NEGLIGENCE — *The Doctrine Abolished.*—The doctrine of comparative negligence is abolished in this State. Atchison, T. & S. F. R. R. Co. v. Feehan, 149 Ill. 214.

Tres[ a is on the Case.—Death from negligence, etc. Appeal from the Circuit Court of Crawford County; the Hon. EDMUND D. YOUNG-BLOOD, Judge, presiding. Heard in this court at the February term, 1895. Reversed and remanded. Opinion filed July 1, 1895.

C. S. CONGER, attorney for appellant.

JONES & NEWLIN and BRADBURY & MACHATTON, attorneys for appellee.

MR. JUSTICE SAMPLE DELIVERED THE OPINION OF THE COURT.

On the 19th day of October, 1893, Archibald S. Maxwell, appellee's intestate, was run over by a car at Robinson and killed, about ten o'clock in the forenoon. He had come from Flat Rock, as a passenger on a freight train, which stopped a short distance south of the depot platform to do some switching there, as was the custom, after which the train would pull up to the platform, to discharge and take on passengers. Those passengers, however, who were in a hurry, or did not want to wait for the switching to be done, whose destination was Robinson, would get out of the ca-

boose and usually walk north along the railroad track to
the depot, and from there go up town. The track ran
north and south and the train in question was bound north.
The depot was north of what is called Main street, on the
west side of the track. About 100 feet south of the depot
was the spur switch, which projected south from that
point on the west side of the main track, distant there-
from ten to fourteen feet or more. The deceased, with
three other gentlemen, at the time in question, got out
of the caboose when the train stopped, as stated, to do
switching, and walked north toward the depot, on the
east side of the main track, until the north end of the
train was reached, when they, part of the time, walked
on the main track, and part of the way west of it, between
it and the spur switch. While they were so engaged, the
engine, with one car attached, had pulled north of depot, to
take water and to get out car on spur switch. To do this
the engine, with car attached, ran back on switch, coupled
to three cars, the third being the one to be taken, pulled
north again, ran that car back to main part of train, then
ran north again to set back the other two cars on switch
which was done, whether by flying switch or otherwise is
in dispute. After so switching said cars, the engine, with
same car attached as formerly, backed down main track,
toward main portion of train, which contained nineteen
cars, at the rate of from four to six miles an hour. There
is some dispute as to whether, when the engine was so
backing down on main track, the cars on switch track were
not also moving back, almost parallel with it. The deceased,
at this time, was about 275 feet from the depot, and slightly
behind the other passengers mentioned, going north on and
along the main track, all of whom except deceased, got out
of the way, but he was struck by the car being driven back
by the engine, run over and killed. There was no brake-
man on the car that struck him, and the jury might well
find, under the evidence, no signals were then being given.
There was nothing to obstruct the view of deceased or
appellant's servants. He was walking toward the car
which ran over him.

The evidence shows he had given a check for his trunk to a 'bus man, just previous to the accident, to transfer it to the I. & I. S. R. R. depot, in order to take it with him that evening, as he left Robinson, and at the time of the collision was looking at his pocket-book, out of which he had taken the check, or, as claimed by appellee, at the cars moving back on the side track. It is clear he was not looking in front of him, along the main track, on which he was walking. There is no proof the passengers were invited to leave the caboose before it reached the platform, to which that train invariably pulled and stopped to discharge them; nor is there any proof that passengers at any time were invited by the train men to get off before reaching the platform. There is proof by one witness that he was told on one occasion, some months before, on some inquiry being made as to time the train would stop, that he could walk up to the depot. It was, however, customary, as known to the train men, for passengers to walk up along the track, as the passengers did on this occasion, to the depot. The condition of the track on either side was such that there was no other convenient way to get there except by walking on or along the track. It was not necessary, however, to actually walk on the track. From the judgment rendered the appellant prosecutes this appeal, and assigns various errors, strenuously insisting there were serious errors in the instructions given for appellee, and that under the evidence there can be no recovery. The court instructed the jury as follows:

" No. 1. The court instructs the jury that the using of a flying or running switch without any precautionary signals is negligence in itself, and if the preponderance of the evidence in this case shows that the defendant made a running switch on the occasion of the killing of Archibald S. Maxwell, deceased, without giving any signals and without placing any brakeman upon their cars, or blowing any whistle or ringing any bell, carelessly managed its train of cars, and by reason thereof, so as to cause the death of said Archibald S. Maxwell, without any fault or negligence on his part, then the jury would be authorized in finding the de-

fendant guilty, and assessing damages at any sum they see fit, from the evidence, not exceeding $5,000, the amount claimed in the declaration."

" No. 5.   The court instructs the jury that if the preponderance of the evidence shows that the train in question was a regular local freight, conveying passengers, and that it was the only mixed train carrying passengers regularly, and that it had a regular schedule time to arrive and depart from Robinson station, then it was the duty of the defendant to be governed by the same regulations as passenger trains, in respect to discharging its passengers from its train, and it was its duty to discharge its passengers at its depot and station.   All passenger trains are required to discharge their passengers at a depot and platform for their safety and convenience, and if a freight train becomes a local passenger carrier, it is governed by the same rules, with respect to its passengers, as passenger trains, where the weight of the evidence shows it is running on a regular schedule time and leaves and departs from the station at an advertised hour, and advertises to carry passengers regularly."

" No. 10.   The court instructs the jury, that the question as to whether the deceased, at the time he was killed, was using due care or was grossly negligent, is not a question of law, but one of fact, to be ascertained by the jury under all the evidence and attendant circumstances in the case, and if the jury believe from the evidence that the deceased was guilty of slight negligence, and if you believe from the evidence that the negligence of the defendant was gross, as compared with that of the deceased, then you may find for the plaintiff on this issue."

It is evident this case is of that character that required the jury to be accurately instructed.   The deceased did not meet his death by collision with a car making a flying switch, nor proximately by reason of the train not being in the first instance pulled up to the platform.   All that is claimed as to the flying switch is that the cars so driven diverted his attention, whereby he did not see the car bearing down upon him on the main track.   Besides, under the

evidence, it is a matter of grave doubt (1) whether the cars on the switch were not some distance past the deceased at the time of the collision; (2) whether he was not actually looking at his pocket-book, out of which, just previously, he had taken his trunk check, when struck by the car on the main track.   These were sharply contested questions. If either fact was true, as contended by appellant, and strongly supported, then the flying switch, as a fact or circumstance, was unrelated to the injury.   He was not struck by such a car.   The court, however, instructed the jury that the "using of a flying switch without any precautionary signals, is negligence in itself" in this case.   This instruction not only invaded the province of the jury (Myers v. I. & St. L. Ry. Co., 113 Ill. 386; Village of Clayton v. Brooks, 150 Ill. 97), but was harmful for the reasons stated. The making of such a switch over a street or road crossing, where, by statute, signals must be given, would be *prima facie* negligence where a collision results in consequence. But that is not this case.   Common law negligence is here averred and must be proved.   It will not be presumed.

The fifth instruction should not have been given.   The proof made by the appellee clearly shows the usage was to do the switching before pulling up to the depot platform, which was invariably done thereafter.   The appellant was only required to conform to that usage.   I. C. R. R. Co. v. Nelson, 59 Ill. 110.   The act of the deceased in getting out of the caboose was voluntary on his part, and as a cause, the failure to pull up to the platform in the first instance is in no legal way related to the injury.   By remaining in the caboose until after the switching was done, he would have been safely landed at the platform.

The tenth instruction is erroneous, not because the stating of the rule of comparative negligence has become fatal error in this State (A., T. & S. F. R. R. Co. v. Feehan, 149 Ill. 214), although it has become obsolete and should not be given, but because it leaves out the essential element, that the jury must believe from the evidence that the deceased at the time was in the exercise of ordinary care.   C. I. & S.

Co. v. Martin, 115 Ill. 358, 368; City of Beardstown v. Smith, 150 Ill. 169, 176; C., C., C. & St. L. Ry. Co. v. Baddeley, 150 Ill. 328, 334.

The judgment is reversed and the cause remanded.